ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:    (415) 436-7034
    Facsimile:    (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:24-mj-71577-MAG |
|     Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
|     v. | |
| ELDIN JAHIR MIRALDA-CRUZ, | |
|     Defendant. | |

## I. SYNOPSIS

On November 1, 2023, defendant Eldin Jahir Miralda-Cruz was arrested at his home in Oakland on a Criminal Complaint for distributing over 100 grams of fentanyl powder on October 23, 2024 to an undercover officer. At that time, he had just turned 18 years old, but had been under federal investigation for fentanyl trafficking for over a year, including multiple prior controlled buys and two rounds of wiretaps of his cellular telephones. That investigation has revealed that Mr. Miralda-Cruz is not some misguided youth being manipulated by others. In his own words—during an intercepted phone call on October 22 that was one of many, many drug trafficking communications—Mr. Miralda-Cruz said he "was hustling because there was no other way."

The self-described hustling by Mr. Miralda-Cruz entails not only distributing fentanyl in the San

1  Francisco Bay area, but also directing his 22 year-old cousin or brother, Melvin Isaid Miralda-Cruz
2  a/k/a/ "Tito" and others to conduct dozens, if not over a hundred, drug deals in Portland, Oregon.  As a
3  testament to the scope of their drug trafficking in Portland, Tito's residence was searched on October 29,
4  2024 and found to have over 3.3 kilograms of fentanyl powder, for which Tito was arrested and charged
5  in the District of Oregon, case no. 3:24-mj-00239.
6         Mr. Miralda-Cruz's prolific drug dealing in two states demonstrates that he is a danger to the
7  community that cannot be mitigated with release conditions.  His proposed surety and custodian should
8  be rejected as having no moral suasion over Mr. Miralda-Cruz—after all, Mr. Miralda-Cruz drug dealt in
9  the same home as that person.  For the reasons contained in the Prebail Report, Mr. Miralda-Cruz also is
10 a flight risk.  Pretrial Services recommends detention on that basis.  But even were he not to flee if
11 released, there remains an unmitigated risk that he will continue drug distribution as he had before—not
12 only in-person here, but by telephone calls and text messages to his co-conspirators in Portland, many of
13 whom have not been identified, let alone arrested.  For the reasons set herein, the Court should find Mr.
14 Miralda-Cruz's continued pretrial detention is appropriate.  He cannot overcome the presumption in this
15 case that no condition, or combination of conditions, exists that will reasonably assure his appearance in
16 court, and the community's safety.

## II. LEGAL STANDARDS

18         The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no
19 condition or combination of conditions will reasonably assure the appearance of the person as required
20 and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is
21 appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to
22 prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant
23 is a flight risk need only be supported by a preponderance of the evidence.  *Id*.  A finding that a
24 defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C.
25 § 3142(f)(2)(B).  "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors
26 articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).
27 Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible.
28 *Id*.  Consideration of factors outside those articulated in section 3142 is also disfavored.  *Id*.

When the defendant is an undocumented alien, facts in connection with that status can be considered by a court in evaluating flight risk, even though the fact of the defendant's involuntary deportation may not. *See generally*, *United States v. Santos-Flores*, 794 F.3d 1088, 1092-93 (9th Cir. 2015). Thus, a court may consider a defendant's "multiple unlawful entries into the United States, . . . , his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him." *Id*. at 1092. Considering these factors does not "create a categorical rule that would prevent release for undocumented defendants . . . ." *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure both the defendant's appearance as required, and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). The initial burden of production to overcome the presumption is on the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). While the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.) *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). The presumption is not so weak that, if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id*. (stating that "a 'bursting bubble' approach might render the presumption virtually meaningless" because a defendant can "always provide the magistrate with some reason"). Thus, the presumption is never erased; instead, it remains as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *U.S. v. King*, 849 F.2d 485 (11th Cir. 1988); *United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the defendant has rebutted the presumption, the court must then consider four factors to determine whether to detain pretrial: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or

parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.    OFFENSE CONDUCT

The Criminal Complaint details Mr. Miralda's Cruz's texts on October 19, leading up to telephone calls and a drug distribution to an undercover of 4 oz f fentanyl for $980 in Oakland on October 23, 2023.  But that's just the tip of the iceberg.  Since August 2023, the Drug Enforcement Administration and Alameda County Narcotics Task Force have been investigating Mr. Miralda-Cruz on suspicion of drug trafficking in the San Francisco Bay Area.  When the investigation started, Mr. Miralda-Cruz was 16 years-old.  So, the investigation was initially focused on finding the adults manipulating this juvenile to do their bidding.  But after five controlled buys, and two periods of wiretap interceptions, the evidence demonstrates that Mr. Miralda-Cruz is a hard-working, independent, and entrepreneurial young drug dealer.  In fact, one of his underlings was his 22 year-old cousin, Tito, in Portland, who he would call daily with directions on how to cut fentanyl, and to deliver drugs in Portland for drug deals that Mr. Miralda-Cruz arranged, from his home in Oakland.

Controlled buys with Mr. Miralda-Cruz during this period were:

- On August 15, 2023, Mr. Miralda-Cruz sold 1 oz. of fentanyl for $200 in Oakland.
- On September 7, 2023, Mr. Miralda-Cruz sold 1 oz. of fentanyl and 500 fentanyl (M30) pills for $1,200 in Oakland.
- On August 1, 2023, Mr. Miralda-Cruz sold 5 oz. of fentanyl for $1,200 in Oakland.
- On July 30, 2024, Mr. Miralda-Cruz negotiated the sale of ¼ oz. of fentanyl and 200 fentanyl (M30) pills for $400 by phone while in Oakland, which Tito delivered in Portland.
- On September 4, 2024, Mr. Miralda-Cruz sold 3 oz. of fentanyl for $400 in Oakland.

During the first wiretap period, from July 25 to August 23, 2024, only one of Mr. Miralda-Cruz's telephone lines was intercepted—the other was unknown at the time.  As reported by the government to the authorizing Court, in the first 15 days alone (through August 8, 2024), Mr. Miralda-Cruz had 1022 telephone calls, of which 453 were "pertinent"—i.e., they appeared to be in furtherance of drug distribution.  Of his 821 texts messages during that same period, 526 were pertinent.

During the second wiretap period, from October 15 to November 3, 202, two of

Mr. Miralda-Cruz's telephone lines were intercepted. As reported by the government to the authorizing Court, during that period, Mr. Miralda-Cruz had 782 telephone calls, of which 361 were pertinent. Of his 1,208 texts messages during that same period, 377 were pertinent.

The pertinent telephone calls and text messages occurred in the afternoons through till 1 am the next day. The communications included Mr. Miralda-Cruz arranging drug deals that he then personally fulfilled in the San Francisco Bay Area. They also included a common sequence to facilitate of drug distribution in Portland: a buyer in Portland called or texted Mr. Miralda-Cruz to ask for an amount of fentanyl, either in weight or dollar value; Mr. Miralda-Cruz confirmed with the purchaser during that call, or texted back; then Mr. Miralda-Cruz would call or text Tito and relay the details, including identifying more regular purchasers by an identifier—e.g., "the Mazda guy," "backwards cap guy," or the "old man"—and an address where the exchange would take place; Mr. Miralda-Cruz would then text that same address—usually in full (including the zip code) so the buyer could readily and accurately map it using a mobile phone app.

In other telephone calls to Tito, Mr. Miralda-Cruz made clear he headed the operation, by conferring with Tito on how much to cut the drugs and then deciding and dictating how Tito should do so. Mr. Miralda-Cruz also would call a fentanyl supplier in Portland to arrange for Tito to pickup fentanyl for distribution, and then relay that information to Tito. On July 29, 2024, Mr. Miralda-Cruz called Tito and discuss trying a new source of fentanyl for them to distribute because their customers did not like the drug product they were distributing, and that the new fentanyl was from the Cartel of "Jalisco, New Generation" (CJNG) which is a violent Mexican cartel that is a major distributor of narcotics into the United States.

The wiretapped telephone calls also capture at least one instance, on July 28, 2024, during which Mr. Miralda-Cruz negotiated an exchange an ounce of fentanyl and 500 pills for a brand-new firearm. And on October 17, 2024, Mr. Miralda-Cruz called Tito and during that call, in addition to discussing cutting drugs, about wanted to get a rifle, saying said he was daydreaming about going out to hunt in the mornings and be camouflaged waiting for prey to arrive.

The investigation into Mr. Miralda-Cruz culminated in a search of both his and Tito's home. No drugs were found in Mr. Miralda-Cruz's home in Oakland—where he was living with his proposed

surety—but there was a pill press with fentanyl residue. This was consistent with Mr. Miralda-Cruz's drug trafficking in the Bay Area per his intercepted telephone calls and text messages. A search of Tito's residence found over 3.3 kilograms of fentanyl powder. (The prebail report states that the investigator, Special Agent Hakim Oduniyi, stated that only 7.5 grams of fentanyl was seized from Tito's residence, but it is clear there has been a miscommunication given the affidavit in support of the Criminal Complaint in Tito's federal case.) Also found at Tito's residence were fentanyl (M30) pills weighing 98.71 grams, over $100,000 in cash, multiple containers of a fentanyl cutting agent (Mannitol), and fentanyl processing equipment. Critically, in intercepted calls after Tito's arrest, Mr. Miralda-Cruz told customers in Portland about Tito's arrest, but also that he (Mr. Miralda-Cruz) had found a way to continue distributing there. Then he was arrested two days later.

### III. THE DEFENDANT'S FLIGHT RISK & UNRELIABLE CUSTODIAN/SURETY

Mr. Miralda-Cruz is undocumented and appears to not be forthcoming about his residential history in the United States. His proposed surety—inconsistent with Mr. Miralda-Cruz—said that Mr. Miralda-Cruz has lived with the surety, except when he "left" and was "brought back twice," a possible reference to Mr. Miralda-Cruz being put in his care as a juvenile. If true, then it demonstrates a troubling pattern of Mr. Miralda-Cruz refusing to let his proposed surety be his actual, legal custodian when Mr. Miralda-Cruz was a juvenile. It appears the proposed surety only qualifies because he has a stable residence and legal immigration status. He has no moral suasion over Mr. Miralda-Cruz to be an effective custodian; he also has no assets or significant income such that the United States could effectively enforce any bond against him should it become necessary—he is literally judgment proof.

### IV. THE DEFENDANT IS SUBJECT TO A REBUTTABLE PRESUMPTION AND THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

Mr. Miralda-Cruz is charged with violating 21 U.S.C. § 841(a)(1) and (b)(1)(C) (distribution of fentanyl), which carries a maximum imprisonment of 20 years. Accordingly, he faces Controlled Substance Act charges with maximum penalties that are 10 or more years. Thus, Mr. Miralda-Cruz is subject to a rebuttable presumption in favor of detention; he bears the burden of proving that he is neither a flight risk nor that his release will endanger the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Mr. Miralda-Cruz cannot meet his burden. The information obtained from Pretrial Services

provide no basis to rebut the presumption as to either issue.  One mitigator noted by Pretrial Services is that he has no history of violence, which is irrelevant to the present danger of his fentanyl dealing. Under section 3142(g)(3) and (g)(4), Mr. Miralda-Cruz is a danger to the community that favors detention given the extent of his fentanyl distribution across state lines, and for over a year.  Another stated mitigator is that there is a third-party custodian available.  But, as noted above, that custodian cannot provide any assurance of moral suasion or other ways to prevent Mr. Miralda-Cruz's drug dealing—living under the same roof before Mr. Miralda-Cruz's arrest made no difference.  And a large part of Mr. Miralda-Cruz's criminal conduct involves orchestrating drug dealing using a cellular telephone, a device that is so ubiquitous these days that no custodian can assure the Court that he could prevent Mr. Miralda-Cruz from using one.  There is clear and convincing proof that no conditions of release will stop this dealer of fentanyl from returning to the drug trade if released—and he has no verified gainful employment as an alternative.

      Mr. Miralda-Cruz has insufficient ties to the community—his proposed surety and custodian is his lone relative here, versus many others in Honduras.  As significant, evidence of Mr. Miralda-Cruz's guilt and likely period of federal imprisonment "makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration).  The preponderance of evidence shows he is a flight risk and should be detained for that reason too.

## V. CONCLUSION

      For the foregoing reasons, the Court should detain Mr. Miralda-Cruz pending trial.

DATED:  November 15, 2024                      Respectfully submitted,

                                                 ISMAIL J. RAMSEY
                                                 United States Attorney

                                                     /s/                          
                                                 DANIEL N. KASSABIAN
                                                 Assistant United States Attorney

2078-6280-9602, v. 1